Anthony J. Petrone v. Commissioner.
Petrone v. Commissioner
Docket No. 57757.
United States Tax Court
T.C. Memo 1959-178; 1959 Tax Ct. Memo LEXIS 70; 18 T.C.M. (CCH) 787; T.C.M. (RIA) 59178; September 22, 1959
Jerome Kamerman, Esq., and Morton Kamerman, Esq., 27 William Street, New York, N. Y., for the petitioner. Colin C. Macdonald, Jr., Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion On February 11, 1955, respondent determined that petitioner's "income tax liability for the taxable years ended December 31, 1940 to December 31, 1947, inclusive, disclosed deficiencies in tax aggregating $1,718,237.69 and penalties aggregating $1,552,767.47 * * *." Specifically, the deficiencies, additions to tax under section 293(b) of the Internal Revenue Code of 1939, additions to tax under section 291(a), and additions to tax under section 294(d) for each of the taxable years were as follows: Income Tax
Sec. 294
Sec. 294
Year
Deficiency
Sec. 293(b)
Sec. 291(a)
(d)(1)(A)
(d)(2)
1940
$ 4,185.32
$ 2,092.66
$ 1,046.33
1941
33,784.12
16,892.06
8,446.03
1942
29,710.97
14,855.49
7,427.75
1943
45,980.57
22,990.29
11,495.14
$ 4,598.06
$ 2,758.83
1944
51,870.67
25,935.34
12,967.67
5,187.07
3,112.24
1945
80,912.23
40,456.12
20,228.06
8,091.22
4,854.73
1946
594,545.03
297,272.52
148,636.26
59,454.50
35,672.70
1947
877,248.78
438,624.39
219,312.20
87,724.88
52,634.93
*71 The statement attached to respondent's notice of deficiency explains the deficiencies as follows: "It has been determined that you [petitioner] received taxable income in the years and in the amounts as shown below, which was not reported in a return, such income representing deposits in your checking accounts the source of which being unexplained. "Year
Amount
1940
$ 24,660.76
1941
70,774.81
1942
55,345.79
1943
72,987.68
1944
80,590.09
1945
112,996.99
1946
716,903.15
1947
1,043,917.33"
Respondent affirmatively alleged in his answer that petitioner received this income and that his failure to file an income tax return in each of the taxable years was fraudulent and with intent to evade taxes. On brief respondent asks us to find that "[the] deficiencies in tax for the taxable years 1941 through 1947, inclusive, were correctly determined by the respondent." However, the parties have stipulated that "there should be eliminated from respondent's determination of taxable income for the year 1946 * * * $586,466.05," and that "there should be eliminated from respondent's determination of taxable income for the year 1947 * * * $942,797.11." Furthermore, *72 at the trial herein respondent's counsel stated that "the respondent concedes the year 1940." Findings of Fact The stipulation of facts filed by the parties is incorporated herein by this reference, together with the exhibits attached thereto. Petitioner lives in Pelham, New York, with his wife Inez F. Petrone, whom he married in 1940, and with his daughter. Petitioner filed a Federal income tax return for the calendar year 1940. He filed no returns for the years 1941 to 1947, inclusive, and filed no declarations of estimated tax for the years 1943 through 1947. During 1940 and 1941 petitioner was engaged in the shoe repair business. This business was unprofitable and he lost all of the assets of that business. During the years 1940 through 1947 petitioner conducted a travel agency business. He received a commission of 6 per cent on the sale of steamship tickets, a commission of 7 per cent on the sale of international airline tickets, and a commission of 5 per cent on the sale of domestic airline tickets. He deposited the gross proceeds from the sale of such tickets in a bank account and remitted the net amount in excess of his commissions to the transportation companies *73 the tickets of which he had sold. During the war years petitioner's travel agency business was not as active as in other years. During the taxable years petitioner was also engaged in the money order business as a subagent of the American Express Company. Most of the money orders sold by petitioner were in amounts under $5 and were used by the purchasers to pay utility bills. The gross commission on the sales of domestic money orders of $10 or less was not over 10 cents, of which the petitioner was entitled to retain one-third. On the sale of domestic money orders in larger amounts petitioner received net commissions of one-third of 25 or 30 cents. On the sale of foreign money orders the commission would be from 25 to 50 cents, of which petitioner was entitled to retain a third. The proceeds of the sales of money orders were deposited by petitioner in a bank account, and the amounts in excess of his share of the commissions were remitted by him to the American Express Company. During the taxable years petitioner also sold foreign currency, but this business was not active during the war years. Between 1940 and 1946 petitioner did not sell in excess of $100 of foreign currency in any *74 one year, while in 1947 he did not sell in excess of $1,000 of foreign currency. He charged a commission on such sales which was in the ratio of 2 cents per pound sterling sold. During the taxable years petitioner was also in the business of taking "want ads," forwarding them to newspapers, and collecting for them. Collections ran from $1 to $5 per "want ad," and petitioner was entitled to a commission of 10 per cent. Petitioner earned approximately $500 a year from the "want ad" business. During the taxable years petitioner was also in the business of preparing income tax returns for which he charged $2 or $3. He prepared from 50 to 100 returns each year. During the years 1942 through 1947 petitioner was also engaged in the insurance brokerage business. Petitioner's commissions on the insurance premiums varied from 8 per cent to 22 1/2 per cent but "generally * * * would run around 15% to 16%." Petitioner collected the gross premiums, deposited them in a bank account, and remitted the amounts in excess of his own commissions to the insurance companies. During the years 1946 and 1947 petitioner was engaged in the business of cashing checks and was licensed by the State of New York *75 to carry on that business. Petitioner's books and records for the taxable years have been lost or destroyed. During the taxable years 1940 to 1945, inclusive, petitioner maintained checking accounts in The Public National Bank and Trust Company of New York in the name of Anthony J. Petrone, Special, and Anthony J. Petrone. The total deposits to said accounts for the years 1940 to 1945, inclusive, were as follows: Anthony J. Petrone
Anthony J.
Special
Petrone
1940
$ 1,257.07
$23,403.69
1941
10,968.10
59,806.71
1942
6,800.64
48,545.15
1943
7,195.22
65,792.46
1944
10,183.49
70,406.60
1945
9,548.31
22,780.43
Deposits in these accounts represented receipts from petitioner's shoe business, his sale of money orders, and the gross amount of insurance premium received by him. During the taxable years 1945 to 1947, inclusive, petitioner maintained checking accounts in the Manufacturer's Trust Company, New York City, New York, in the name of Petrone Travel Agency and A. J. Petrone. The total deposits to said accounts for the years 1945 to 1947, inclusive, were as follows: Petrone Travel l
yagency
A. J. Petrone
1945
$44,133.10
$34,111.48
1946
80,355.98
22,464.24
1947
95,749.65
17,522.76
*76 Deposits in the Petrone Travel Agency account represented the proceeds from the sale of tickets and the sale of money orders. Deposits in the A. J. Petrone account represented gross insurance premiums collected. During the years 1945 to 1947, inclusive, a checking account was maintained in the name of Inez F. Petrone in the Manufacturer's Trust Company, New York, New York. The total deposits to said account for said years were as follows: 1945
$2,423.67
1946
2,827.00
1947
3,101.19
This bank account constituted petitioner's household checking account and the moneys deposited therein were furnished by petitioner. During the years 1946 and 1947 petitioner maintained a checking account in the Manufacturer's Trust Company, New York, New York, in the name of A. J. Petrone, Special. The total deposits to that account for those years were principally derived from petitioner's check-cashing business and were as follows: 1946
$611,255.93
1947
927,543.73
During the taxable year 1946 the total dollar amount of checks cashed in petitioner's check-cashing business was $590,180.68 upon which the gross statutory fees collected by petitioner for such *77 service were $3,714.63. It is stipulated that there should be eliminated from respondent's determination of taxable income for the year 1946 the difference between the aforesaid amounts, $586,466.05. During the taxable year 1947 the total dollar amount of checks cashed in petitioner's check-cashing business was $948,729.58 upon which the gross statutory fees collected by petitioner for such service were $5,932.47. It is stipulated that there should be eliminated from respondent's determination of taxable income for the year 1947 the difference between the aforesaid amounts, $942,797.11. In 1942 petitioner opened a savings account in the Dollar Savings Bank of New York in his own name in trust for his wife. During the years 1942 through 1947 the following credits were made to this account: Interest and
Year
Deposits
Dividends
1942
$1,785
1943
3,200
$33.26
1944
3,410
47.91
1945
750
60.52
1946
71.82
1947
72.91
In 1943 a savings account in the same bank was opened in the name of petitioner's wife in trust for petitioner. The deposits made therein were of funds belonging to petitioner. During the years 1943 through 1947 the following credits *78 were made to this account: Interest and
Year
Deposits
Dividends
1943
$2,000
1944
3,000
$30.68
1945
75.73
1946
76.87
1947
78.03
The only withdrawal made from either of these savings accounts was made on December 31, 1943, from the account in petitioner's name and in the sum of $4,515.50. Petitioner also had a savings account in The Public National Bank and Trust Company of New York. He deposited $1,387.50 in this account in 1940, $741.88 in 1941, and $500 in 1942. In 1945 petitioner opened a savings account in the North Side Savings Bank. He deposited $4,750 in that account in 1945. In 1943 petitioner bought a home in Pelham, New York, for $9,000. As of November 30, 1943, he had paid on account $500 and was obligated to pay in addition to the first mortgage of $4,000 the sum of $4,670.46. This sum he did pay shortly thereafter. In connection with his various business activities petitioner rented an office, maintained a telephone, and hired an employee or employees. Petitioner testified on direct examination that his net taxable income for each of the taxable years "might have been over $5,000" but was "under $10,000." Respondent's *79 agents began an investigation of petitioner's tax liability for the years 1940 through 1947 in December 1953. In April 1954 petitioner attended a conference at a special agent's office at which he answered questions, some off the record and some on the record. After that conference respondent's agents made no further contact with petitioner. Petitioner's records for the years 1940 through 1947 were not available since they had been thrown away sometime prior to 1952. Respondent's agents examined petitioner's various bank accounts. They were aware of the fact that he was in the business of check cashing, selling transportation tickets and money orders, and selling insurance on commissions. They were aware of the withdrawals made from petitioner's bank accounts. In the course of their investigation they prepared a statement showing petitioner's net worth as of December 31, 1947, to be $38,819.19. Petitioner's net taxable income for each of the years 1941 through 1947 was not less than $5,000. Petitioner's failure to file returns and declarations of estimated tax was not due to reasonable cause. Opinion KERN, Judge: In this case respondent determined deficiencies in Federal income *80 taxes against petitioner for 8 years in the aggregate amount of over $1,700,000, with additions to tax aggregating over $1,500,000, resulting primarily from his determination that petitioner's income for those years aggregated over $2,100,000. At the time this determination was made, respondent's agents knew that petitioner's net worth at the end of the last taxable year (in which respondent determined that petitioner had received over $1,000,000 in income) was only $38,819.19. Respondent determined that all of petitioner's deposits in his principal bank accounts constituted gross income although he knew that petitioner's main business activities were selling money orders, travel tickets, and insurance and cashing checks, and accordingly knew that petitioner's gross income could reasonably be only a comparatively small percentage of his gross receipts. Many adjectives could be used to describe the determination of deficiency here involved, among which might be the adjectives "fantastic" and "preposterous." It it enough for us to conclude, as we do, that the determination of deficiency is arbitrary and excessive. Accordingly, we agree with petitioner that no presumption of correctness *81 attaches to the notice of deficiency in this case. However, contrary to petitioner's contentions, we are of the opinion that there is adequate evidence in the record to permit us to make findings, at least in minimal amounts, as to petitioner's net taxable income for the years 1941 through 1947, without recourse to any presumptions. Before considering this question, however, we dispose of petitioner's contention that he filed returns for all of the taxable years and therefore any deficiencies are barred by the statute of limitations. A large part of the record in this case is made up of testimony on this point. Four officials of the Internal Revenue Service from the district directors' offices in Albany, Lower Manhattan, Upper Manhattan, and Brooklyn testified that they had searched the records in their offices and found that no Federal income tax returns had been filed by petitioner for the years 1941 through 1947. Petitioner testified that "to the best of [his] recollection" he filed tax returns for the taxable years but he did not "recall at which offices [he] filed." Our impression of petitioner formed at the time of the trial was that of a pleasant, energetic, frugal, *82 and industrious person, but one who was far from being meticulously accurate in his testimony. We are not disposed to accept his self-serving, unsubstantiated, and somewhat half-hearted testimony on this point as successfully negating the logical conclusion to be drawn from the testimony of respondent's witnesses. Accordingly, we have concluded that petitioner did not file Federal tax returns for the years 1941 through 1947. In determining the amount of petitioner's net taxable income for each of the years before us, we have considered those facts stipulated by the parties and established by the petitioner's own testimony. Among these are the receipts from his various business activities, the percentages of his commissions, and the deposits in his home checking account and his and his wife's savings accounts. Our conclusions are consistent with petitioner's own admissions on cross-examination. The only element in our consideration of this question, upon which the record is disturbingly unsatisfactory, is the amount to be allowed to petitioner each year as a deduction for office rent and expenses. With regard to this element we have relied upon the socalled Cohan rule and have approximated *83 minimal amounts deductible on account of these items. The results of our consideration of the question of what was petitioner's net taxable income for each of the years before us are stated in our findings and are, in our opinion, supported by a fair preponderance of the evidence. However, with regard to the additions to tax on account of fraud, the respondent has by statute the burden of producing convincing proof. In our opinion this burden has not been successfully borne by respondent in this case. The other additions to tax are proper in view of our conclusion that petitioner filed no returns for the years 1941 through 1947. Decision will be entered under Rule 50.